WALLACE, JUDGE:
The claimant seeks $63,000.00 from the respondent for architectural work performed for the Fairmont Emergency Hospital in Fairmont, West Virginia.
By contract with the Department of Public Institutions, dated October 16, 1972, the claimant was to furnish archi *308 tectural services for the construction and renovation of the Fairmont Emergency Hospital. A decision was made later not to renovate the existing facilities, but to build a new facility. The first and second appropriations of funds by the Legislature were not sufficient, and the building was completed as far as possible in April 1976. The claimant was paid all compensation due him under his contract and the subsequent change orders.
In January 1977, the Legislature appropriated $1,500,000.00 to complete the work on the hospital. These funds became available on July 1, 1977. Also on July 1, 1977, the State Department of Health came into being, consolidating certain other departments, including the Department of Public Institutions. A search committee was formed to find and recommend someone to be the director of the new department. Dr. Charles Andrews of the Medical School of West Virginia University was named Acting Director.
The record indicates that the claimant actively pursued his employment to complete the project. He testified that he was in constant contact with Blake Boggess, the administrator of the hospital; that he had met with Dr. Andrews and told him what was necessary to complete the building; and that Blake Boggess had contacted his organization and told them “to proceed to complete the drawings for the finalization of the building.” The claimant further stated that he then submitted plans and specifications to Blake Boggess.
Claimant stated that he received an agreement from Blake Boggess covering the work to be done, which he signed and returned. However, claimant never received an approved and executed copy.
Blake Boggess testified that he met with Dr. Andrews in late July of 1977; that Jane Stout, Acting Director of the Division of Hospitals, and Keith Swarny, assistant to Mr. Boggess, were present; and that the reason for the meeting was to make Dr. Andrews aware of the status of the hospital. Mr. Boggess stated that Dr. Andrews instructed him “to proceed to draw up the initiating documents to get the project under way.” He talked with the claimant and his son and *309 instructed them to proceed with the project. Mr. Swarny, using an old purchase order as a guide, prepared the purchase order signed by the claimant. After being initialed by Boggess, it was forwarded to Charleston. Mr. Boggess stated that his authority ended when he sent the requisition to the central office, that “the final authority would have been with the Director of the Health Department,” and that “we wanted to be ready to go with the project when the final approval came through.”
Jane Stout testified that she met often with Dr. Andrews, and that she had attended the meeting with Blake Boggess and had the impression that Dr. Andrews gave Blake Boggess permission “to give Henry Elden the go-ahead to write the plans.” In the course of her testimony, she was asked:
Q “I take it from that that you mean you had the general impression that Dr. Andrews may have authorized Blake Boggess to go ahead?”
A “Well, mainly, because Henry Elden did go ahead after that meeting and we had the plans that he wrote.”
Dr. Andrews testified that he had met with the claimant on three occasions; that he was aware that the hospital was not completed; and that claimant had been the architect. He testified that he probably met with Blake Boggess, but doubted that he told him to proceed. He stated, “. . .1 may have discussed it but I don’t think I would have told anybody to proceed on the building without contracts and procedures and things you go through to do it.” He did not authorize the claimant to proceed, but decided it could wait for the director to determine what he was going to do with the building.
Dr. George Pickett was appointed Director of the State Health Department and commenced his duties in September 1977. Upon assuming his duties, he visited all of the State institutions. Dr. Pickett testified that, during the interim prior to his appointment, Dr. Andrews made the decisions that had to be made; decisions involving policy, or the issues were postponed. When Dr. Pickett visited Fairmont Emergency *310 Hospital, he found that the building was in place but not finished. There was no heat and no floor coverings. One elevator was working, and not all rooms had toilet facilities. Doors were not hung. It was not a functional building. He stated, . .There were no visible programs that indicated that there was any kind of planning that I could find anywhere in the files that told me what the facility was to be.” A determination was made to establish a primary general hospital. Proposals were solicited from architects for making necessary corrections, design changes, and construction changes to bring it into compliance with this purpose. The claimant was among those invited to submit proposals.
Dr. Pickett further stated that, as a result of his investigation, he was not able to find any type of directive that could be construed as a direction from Dr. Andrews or the Health Department to proceed with any kind of obligation with the claimant.
W.Y.K. Associates of Clarksburg received the contract for the exterior work, and L. D. Schmidt and Son of Fairmont completed the interior plans.
The claimant contends that there was no substantial difference between his plans and the plans used by the architects selected in the completion of the hospital, and that he is entitled to be compensated for his plans. The respondent contends that there were substantial changes made which were necessary to complete the building for its designated use.
Daniel R. Smithson, Staff Engineer for the Department of Health, stated, “The things we did may not significantly change a building to someone that’s not familiar with construction . . . basically, the building looked the same . . . the building was designed . . . for a program that did not fit our need . . . we reviewed these drawings and reviewed the . . . specifications . . . set forth by Medicare and Medicaid and we attempted to bring the building as close as possible in conformity with these codes.”
Certain areas were eliminated, walls were changed, room sizes varied, and omitted fireproofing was completed. The *311 respondent relied on the parties as designated to complete the building, and, if the successful architects did, in fact, use the work of the claimant, it would be a matter between the architects.
The record establishes that the claimant had performed services for many of the various State departments as well as federal agencies. Claimant was familiar with the contract procedures necessary before employment is insured. He knew that it was necessary for the spending agency to initiate the contract which then had to be approved by the Department of Finance and Administration, followed by approval of the Attorney General as to its form. This was not done.
Miles Dean, who at the time was Director of Finance and Administration, testified that no contract was submitted to his Department employing the claimant to complete the hospital work. Daniel R. Smithson, the Staff Engineer for the Department of Health, testified that he had no instructions from Dr. Andrews or Dr. Pickett to work with the claimant on the project.
Since the claimant had no contract with the respondent, the Court denies the claim.
Claim disallowed.